CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAY 31 2016

JULIA C DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| WILLARD CLAYTOR, et al., <br><br> Plaintiffs, <br><br> v. <br><br> VOLKSWAGEN GROUP OF AMERICA, INC., <br><br> Defendant. | Civil Action Nos. 7:16CV00197 & 7:16CV00198 <br><br> **MEMORANDUM OPINION** <br><br> By: Hon. Glen E. Conrad <br> Chief United States District Judge |
| WILLARD CLAYTOR, et al., on behalf of themselves and all other Virginia citizens similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> VOLKSWAGEN GROUP OF AMERICA, INC. <br><br> Defendant. | |

Plaintiffs Willard Claytor, Tammy Woods, Lisa Sleeper, Joshua Davis, Michael DiCarlo, William Albert, and Douglas Lindamood filed these related actions against Volkswagen Group of America, Inc. ("Volkswagen") in the Circuit Court for the County of Roanoke, seeking equitable relief and monetary damages for alleged violations of Virginia statutory and common law. On April 26, 2016, Volkswagen removed the cases to this court, asserting that the court has subject matter jurisdiction over the cases because the plaintiffs' claims for equitable relief implicate a significant federal issue. The plaintiffs have moved to remand the cases to state court. Volkswagen opposes the plaintiffs' motions and has moved to stay further proceedings

pending a transfer decision by the Judicial Panel on Multidistrict Litigation ("MDL Panel"). For the reasons set forth below, the plaintiffs' motion to remand will be granted and Volkswagen's motion to stay will be denied as moot.

## Background

The following facts are taken from the original complaints filed by the plaintiffs. See Pinney v. Nokia, Inc., 402 F.3d 430, 443 (4th Cir. 2005) ("Because amendment occurred after removal, we look at the original complaints rather than the amended complaints in determining whether removal was proper.") (citing Pullman Co. v. Jenkins, 305 U.S. 534, 537 (1939)).

On September 18, 2015, the Environmental Protection Agency ("EPA") issued a Notice of Violation to Volkswagen for alleged violations of the federal Clean Air Act ("CAA"). The EPA determined that Volkswagen had installed software-based "defeat devices" in certain model year 2009 through 2015 diesel vehicles, which "bypass, defeat, or render inoperative elements of the vehicles' emission control systems that exist to comply with CAA . . . emission standards." No. 7:16CV00197 Compl. ¶ 20; No. 7:16CV00198 Compl. ¶ 22. The software senses when the vehicles are being tested for compliance with emission standards, and produces compliant emission results during the testing. At all other times that the vehicles are being operated, the software reduces the effectiveness of the emission control systems. As a result, the vehicles emit levels of pollutants up to forty times above EPA-compliant levels during normal operation.

In a press release issued on September 18, 2015, the EPA advised car owners that "although these vehicles have emissions exceeding standards, these violations do not present a safety hazard and the cars remain legal to drive and resell." No. 7:16CV00197 Compl. ¶ 26; No. 7:16CV00198 Compl. ¶ 28. The EPA also indicated that "[i]t is incumbent upon Volkswagen to

2

initiate the process that will fix the cars' emissions systems," and that "[o]wners of cars of these models do not need to take any action at this time." Id.

The EPA's Notice of Violation listed the Volkswagen models equipped with the software-based defeat devices. Each of the plaintiffs owns one of the models identified in the Notice. The plaintiffs allege that Volkswagen knew about the defeat devices, and yet marketed and sold their vehicles as "clean diesel" models. The plaintiffs allege that they relied upon Volkswagen's false representations regarding the vehicles' environmentally friendly status in electing to purchase their vehicles. The plaintiffs further allege that the Volkswagen vehicles that they purchased cannot be legally operated on the roads of Virginia, and that they are being exposed to criminal charges and traffic fines as a result of Volkswagen's fraudulent actions.

In April of 2016, the plaintiffs filed two complaints against Volkswagen in the Circuit Court for the County of Roanoke. The first complaint sought individual relief and the second sought relief for all other similarly situated citizens of Virginia. Both complaints include a claim for permanent injunctive relief in the form of an order awarding the plaintiffs immediate rescission of their vehicles' sales contracts, and a motion for temporary injunctive relief in the form of an order requiring Volkswagen to provide loaner or rental vehicles at no expense. The first complaint also includes claims for damages under the Virginia Motor Vehicle Warranty Enforcement Act and the Virginia Consumer Protection Act, as well as a claim for punitive damages for Volkswagen's alleged fraud.

The plaintiffs' claims for equitable relief, particularly their requests for a temporary injunction, are premised on the assertion that their Volkswagen vehicles are illegal to drive in Virginia under a number of state statutory and regulatory provisions. The statute on which the plaintiffs primarily rely, Virginia Code § 46.2-1048, provides in pertinent part as follows:

3

> No motor vehicle registered in the Commonwealth and manufactured for the model year 1973 or for subsequent model years shall be operated on the highways in the Commonwealth unless it is equipped with an air pollution control system, device, or combination of such systems or devices installed in accordance with federal laws and regulations.
>
> It shall be unlawful for any person to operate a motor vehicle, as herein described, on the highways in the Commonwealth with its pollution control system or device removed or otherwise rendered inoperable.

Va. Code § 46.2-1048.

On April 26, 2016, Volkswagen removed the plaintiffs' Roanoke County suits to this court. Thereafter, the plaintiffs moved to remand the cases to state court, asserting a lack of federal jurisdiction. The plaintiffs also filed amended complaints in both cases.

In the meantime, Volkswagen moved to stay the cases pending transfer to the multidistrict litigation currently pending in the United States District Court for the Northern District of California. See In re: Volkswagen "Clean Diesel Marketing," Sales Practices, and Products Liability Litigation, MDL No. 2672 (N.D. Cal. 2015). Volkswagen's motions were prompted by the issuance of conditional transfer orders by the MDL Panel, which conditionally transferred these actions to the multidistrict litigation.

The court held a hearing on the parties' motions on May 19, 2016. The motions have been fully briefed and are ripe for review.

## Discussion

### I. Motions to Remand

Despite the fact that these cases have been conditionally transferred to the multidistrict litigation, this court has the authority to rule on the plaintiffs' motions to remand. See Stephens v. Kaiser Found. Health Plan of the Mid-Atlantic States, Inc., 807 F. Supp. 2d 375, 381 (D. Md. 2011) (citing cases). Indeed, the Rules of the Judicial Panel on Multidistrict Litigation expressly

4

provide that "[t]he pendency of a . . . conditional transfer order . . . before the Panel pursuant to 28 U.S.C. § 1407 does not affect or suspend orders and pretrial proceedings in any pending federal district court action and does not limit the pretrial jurisdiction of that court." R.P.J.P.M.L. 2.1(d). Moreover, "if this court does not have jurisdiction over [the plaintiffs' actions], then neither will the MDL court." Stephens, 807 F. Supp. 2d at 381.

Volkswagen, as the party seeking removal, bears the burden of establishing the existence of federal jurisdiction. Hoschar v. Appalachian Power Co., 739 F.3d 163, 169 (4th Cir. 2014). The court is "obliged to construe removal jurisdiction strictly because of the 'significant federalism concerns' implicated." Dixon v. Coburg Dairy, Inc., 369 F.3d 811, 816 (4th Cir. 2004) (quoting Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994)). "Therefore, if federal jurisdiction is doubtful, a remand to state court is necessary." Id. (internal quotation marks and brackets omitted); see also Palisades Collections LLC v. Shorts, 552 F.3d 327, 336 (4th Cir. 2008) (emphasizing that courts have a "duty to construe removal jurisdiction strictly and resolve all doubts in favor of remand"); Marshall v. Manville Sales Corp., 6 F.3d 229, 232 (4th Cir. 1993) (recognizing "Congress' clear intention to restrict removal and to resolve all doubts about the propriety of removal in favor of retained state court jurisdiction").

Federal removal jurisdiction may be exercised over state court actions "of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). In this case, Volkswagen alleges that this court has original jurisdiction over the plaintiffs' actions under 28 U.S.C. § 1331.[1] Section 1331 grants federal district courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

---

[1] Volkswagen acknowledges that diversity jurisdiction under 28 U.S.C. § 1332 does not exist because the plaintiffs and Volkswagen are citizens of Virginia.

5

Thus, the court must decide whether the plaintiffs' actions arise under federal law. In making this determination, the "well-pleaded complaint rule" demands that the court confine its inquiry to "the plaintiff's statement of his own claim[s] . . . unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose." Flying Pigs, LLC v. RRAJ Franchising, LLC, 757 F.3d 177, 182 (4th Cir. 2014) (internal quotation marks omitted).

For purposes of § 1331, "a case can 'arise under' federal law in one of two ways." Gunn v. Minton, 133 S. Ct. 1059, 1064 (2013). The majority of cases that arise under federal law involve a cause of action created by federal law. Id. In such cases, "the courts of the United States unquestionably have federal subject matter jurisdiction." Mulcahey, 29 F.3d at 151. These cases, as Volkswagen acknowledges, do not fall within that category. Accordingly, the court must determine whether they fall within the special and small category of cases in which federal question jurisdiction exists over state law claims that implicate "significant federal issues." Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 314 (2005).

"In recent years, the Supreme Court has brought greater clarity to what it describes as a traditionally 'unruly doctrine,' emphasizing its 'slim contours.'" Flying Pigs, LLC, 757 F.3d at 182 (4th Cir. 2014) (quoting Gunn, 133 S. Ct. at 1065)). Specifically, under Grable and Gunn, "federal jurisdiction over a state law claim will lie [only] if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." Gunn, 133 S. Ct. at 1065. "Where all four of these requirements are met, . . . jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." Id. (quoting Grable, 545 U.S. at 313-314).

6

In the instant cases, Volkswagen contends that a federal issue is necessarily raised by the plaintiffs' claims for temporary and permanent injunctive relief.[2] As noted above, these claims are premised on the assertion that the plaintiffs' Volkswagen vehicles are illegal to operate in Virginia. Volkswagen maintains that the plaintiffs cannot prevail on their claims for equitable relief without resorting to federal law. In particular, Volkswagen argues that the determination of whether the plaintiffs' vehicles are legal to operate in Virginia "turns on whether the vehicles' emission control systems were installed 'in accordance with federal laws and regulations,'" specifically the Clean Air Act and regulations promulgated thereunder. No. 7:16CV00197 Br. in Opp'n to Mot. to Remand 10 (quoting Va. Code § 46.2-1048); see also Mot. H'rg Tr. 11 ("In order for this court to decide the equitable claims, or any court, [plaintiffs' counsel] has to prove as an element of his claim that the individual Volkswagen drivers are violating Virginia law. In order to do that, he has to prove that those individual drivers and their vehicles violate the Clea[n] Air Act.").

The fundamental problem with Volkswagen's argument is that it is based on a selective reading of the statutes and regulations cited in the plaintiffs' original complaints and ignores other clauses on which the plaintiffs' requests for equitable relief are based. For instance, while Virginia Code § 46.2-1048 does, in fact, prohibit motor vehicles from being operated on Virginia highways unless they are equipped with air pollution control systems "installed in accordance with federal laws and regulations," the second paragraph of the statute also makes it "unlawful" to "operate a motor vehicle . . . on the highways in the Commonwealth with its pollution control

---

[2] During the hearing on the instant motions, Volkswagen conceded that the plaintiffs' claims for damages based on alleged violations of Virginia statutory and common law do not necessarily raise a federal issue. See May 19, 2016 H'rg Tr. 9 (distinguishing the plaintiffs' cases from others that were not removed from state court, which involve "exclusively claims for money damages on the basis of fraud and the Virginia Consumer Protection Act [and] do not seek equitable relief, whether temporary or permanent"); Id. at 48 (emphasizing that the plaintiffs could "get a ticket back to state court" if they withdrew their requests for injunctive relief).

7

system or device removed or otherwise rendered inoperable." Va. Code § 46.2-1048. Likewise, regulations promulgated by the State Air Pollution Control Board prohibit the operation of a motor vehicle with its pollution control system "rendered inoperable." 9 VAC 5-40-5670(A)(3); 9 VAC 5-91-190(D).

In both of their original complaints, the plaintiffs specifically allege that their Volkswagen vehicles contain software-based devices which "render inoperative" elements of the vehicles' emission control systems. See No. 7:16CV00197 Compl. ¶ 20; No. 7:16CV00198 Compl. ¶ 22. Although the plaintiffs note that the installation of such devices is prohibited by the Clean Air Act,[3] they assert that the <u>operation</u> of motor vehicles containing such devices is prohibited by Virginia law, namely the statutory and regulatory provisions cited above.[4] Thus, to the extent the plaintiffs' claims for equitable relief are based on the assertion that their vehicles are illegal to operate in Virginia, their claims could rise or fall entirely based on the interpretation of state law. As the United States Court of Appeals for the Fourth Circuit has recognized, "a plaintiff's right to relief for a given claim necessarily depends on a question of federal law only when <u>every</u> legal theory supporting the claim requires the resolution of a federal

---

[3] See 42 U.S.C. § 7522(a)(3)(B) (prohibiting the installation of "any part or component intended for use with, or as part of, any motor vehicle or motor vehicle engine, where a principal effect of the part or component is to bypass, defeat, or render inoperative any device or element of design installed on or in a motor vehicle or motor vehicle engine in compliance with regulations under this title").

[4] As the plaintiffs emphasize in support of their motions to remand, the Clean Air Act reserves to the states "the right . . . to control, regulate, or restrict the use, operation, or movement of registered or licensed motor vehicles." 42 U.S.C. § 7543(d); see also Sims v. Florida Dep't of Highway Safety & Motor Vehicles, 862 F.2d 1449, 1455 & n. 8 (11th Cir. 1989) (noting that § 7543(d) "indicates Congress's intent to exclusively enforce federal emissions standards relating to new automobiles before their initial sale because the statute specifically allows the state to regulate automobile use and operation subsequent to the initial sale"); Ass'n of Taxicab Operators, USA v. City of Dallas, 866 F. Supp. 2d 595, 599 (N.D. Tex. Mar. 28, 2012) (emphasizing that § 7543(d) "preserves state and local authority over use and operations of vehicles"). "That there is a federal law permitting [the state to take] such [action] does not change the basis of the suit, which is still the statute of the state." Gully v. First Nat'l Bank, 299 U.S. 109, 115 (1936).

8

Case 7:16-cv-00197-GEC Document 33 Filed 05/31/16 Page 8 of 12 Pageid#: 2263

issue." Dixon, 369 F.3d at 816 (emphasis in original). Because the plaintiffs advance a theory in support of their claims for equitable relief that does not require the resolution of a federal issue, the "necessarily raised" requirement formulated and explained by the Supreme Court in Grable and Gunn has not been satisfied. See id. (emphasizing that "if the plaintiff can support his claim with even one theory that does not call for an interpretation of federal law, his claim does not 'arise under' federal law for purposes of § 1331); see also Springsted v. Valenti Motors, Inc., No. 3:16CV214, 2016 U.S. Dist. LEXIS 66959, at *8-9 (D. Conn. May 20, 2016) (holding that the plaintiffs' claims against Volkswagen and others did not necessarily raise a federal question, since they were also based on the assertion that the plaintiffs' vehicle did not comply with state law); Lougy v. Volkswagen Grp. of Am., Inc., No. 16-1670 (D. N.J. May 19, 2016) (holding that the plaintiffs' state statutory claim against Volkswagen did not give rise to federal question jurisdiction under Grable since the claim was based on alternative theories, some of which had no necessary federal element).

To the extent Volkswagen argues that the plaintiffs' theory conflicts with the Clean Air Act or the EPA's interpretation of the Act's provisions, such argument sounds in preemption, which is not a valid basis for removal.[5] It is well-settled that "a case may <u>not</u> be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." Caterpillar, Inc. v. Williams, 482 U.S. 386, 393 (1987) (emphasis in original); see also Nordan v. Blackwater Sec. Consulting, LLC, 460 F.3d 576, 584 (4th Cir. 2006) ("Under what has become known as the well-pleaded complaint

---

[5] The court notes that Volkswagen recently moved to dismiss the plaintiffs' complaints on the basis that the plaintiffs' claims are preempted by the Clean Air Act. This defense, and any other defense based on federal law, can be raised in state court. See El Paso Natural Gas Co. v. Neztsosie, 526 U.S. 473, 485 n.7 (1999) (noting that "state courts . . . can and do decide questions of federal law, and there is no reason to think that questions of federal preemption are any different").

9

rule, § 1331 federal question jurisdiction is limited to actions in which the plaintiff's well-pleaded complaint raises an issue of federal law; actions in which defendants merely claim a substantive federal defense to a state-law claim do not raise a federal question."). Neither Grable nor Gunn removed the requirement that a federal question appear on the face of a plaintiff's well-pleaded complaint. See, e.g., Cal. Shock Trauma Air Rescue v. State Compensation Ins. Fund, 636 F.3d 538, 542 (9th Cir. 2011) ("Grable stands for the proposition that a state-law claim will present a justiciable federal question only if it satisfies both the well-pleaded complaint rule and passes the 'implicate[s] significant federal issues' test."); NeuroRepair, Inc. v. Nath Law Grp., 781 F.3d 1340, 1344 (Fed. Cir. 2015) (applying the well-pleaded complaint rule in conjunction with "Gunn's jurisdictional test").

Finally, the court notes that a mere nexus between the federal emissions standards and the plaintiffs' state law claims is not sufficient to establish federal question jurisdiction. See Pinney, 402 F.3d at 449 (rejecting the defendant's argument that the substantial federal question test could be satisfied by a "sufficient connection" between the plaintiffs' claims for relief and a federal regulatory scheme). "The Supreme Court has been quite clear that for removal to be proper under the substantial federal question doctrine, a plaintiff's ability to establish the necessary elements of his state law claims must rise or fall on the resolution of a question of federal law." Id. (citing Merrell Dow Pharms., Inc. v. Thompson, 478 U.S. 804, 813 (1986) for the proposition that that the "mere presence of a federal issue in a state cause of action does not confer federal question jurisdiction").

For all of these reasons, the court concludes that Volkswagen has not met its burden of demonstrating that a question of federal law is "necessarily raised" by the plaintiffs' claims for

equitable relief. Gunn, 133 S. Ct. at 1065 (citing Grable, 545 U.S. at 313-314).[6] Because none of the plaintiffs' claims arise under federal law, the court does not have original jurisdiction over the cases pursuant to § 1331. Accordingly, the court must grant the plaintiffs' motions to remand.

## II. Requests for Attorney's Fees and Costs

Having decided to remand the plaintiffs' cases to state court, the court must determine whether to award attorney's fees and costs to the plaintiffs. Under 28 U.S.C. § 1447(c), "[a]n order remanding [a] case may require payment of just costs and any actual expenses, including attorneys fees, incurred as a result of the removal." However, "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447 only where the removing party lacked an objectively reasonable basis for seeking removal." Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005). The court does not find that to be the case here. Although Volkswagen was ultimately unsuccessful in establishing that the plaintiffs' claims arise under federal law, its efforts to remove the cases to federal court were not objectively unreasonable. Accordingly, the court declines to award fees and costs to the plaintiffs.

## Conclusion

For the reasons stated, the court will grant the plaintiffs' motions to remand and remand these cases to the Circuit Court for the County of Roanoke. The defendant's motion to stay proceedings will be denied as moot.

---

[6] In light of the court's conclusion that the plaintiffs' claims do not necessarily raise a federal issue, the court need not address the other prerequisites for federal question jurisdiction formulated and explained by the Supreme Court in Grable and Gunn.

11

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This 31st day of May, 2016.

*/s/ Glen Conrad*
Chief United States District Judge